UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH M. VERRIER,

            Plaintiff,

v.                          Case No: 2:14-cv-744-FtM-29CM

PETER  PERRINO,  Agent  and
DIANE LAPAUL, Supervisor,

            Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion for
Summary Judgment (Doc. #147) filed on November 6, 2017.  Plaintiff
filed a Response (Doc. #149) on November 21, 2017.

**I.**

The undisputed facts are as follows:

Joseph Verrier (plaintiff or Verrier) is a Sex Offender
probationer following two convictions in the state of Wisconsin.
(Doc. #147-1, pp. 1-7.)  Specifically, on February 24, 2010,
plaintiff pled no contest to count 1 "Child Enticement –
Prostitution" in violation of Wisconsin State Statute section
948.07(2) and count 6 attempt of "Child Enticement – Prostitution"
in violation of Wisconsin State Statute sections 939.32 and
948.07(2) in Outagamie County, case number 2009CF000232 (Outgamie
case).  (Id. at 1-4.)  On July 21, 2010, plaintiff pled no contest
to count 1 "Child Enticement – Sexual Contact" in violation of

Wisconsin State Statute section 948.07(1) in Manitowoc County, case number 2009CF000153 (Manitowoc case). (Id. at 5-7.) In the Outagamie case, Plaintiff was sentenced to four years State Prison with "Extended Supervision 6 years" for count 1 and five years probation consecutive to count 1 for count 6. (Id. at 10.) In the Manitowoc case, plaintiff was sentenced to fourteen years probation. (Id.)

Plaintiff's State of Wisconsin "Special Bulletin" dated October 30, 2013 states the following:

- **"GPS REQUIRED? YES (2 STRIKES)."** (Id. at 8.)

- Approved on December 23, 2013, for interstate transfer to Florida to reside with his mother and stepfather located in Saint James City, Florida. (Id. at 9.)

- Released from Oshkosh Correctional Institution to "Saint James City in Florida" on February 18, 2014. (Id.)

- "Mr. Verrier will be expected to obtain employment or enroll in school upon release." (Id. at 12.)

- "It should be noted [VERRIER] used work telephone and work computers when committing these offenses . . . ." (Id. at 13.)

- "Mr. Verrier has two separate convictions which require registration with the Sex Offender Registry Program. Therefore, he is an automatic SBN subject to Lifetime

GPS monitoring while residing in Wisconsin. Mr. Verrier's current plan is to reside in Florida, therefore, GPS is not required by law. However, should the plan change, or should Mr. Verrier return to Wisconsin, he will be placed on GPS and exclusion zones will be entered where appropriate. GPS points will be regularly reviewed to verify his whereabouts. Regardless of where he lives, he will be subject to sex offender rules and restricted from leaving the county area without agent approval. He will be limited in his use of a computer or any device which can access the internet, record or transmit images." (Id.)

- "Mr. Verrier will be supervised by Florida parole staff through the interstate compact process and will be held accountable for all rules of the Wisconsin DOC in addition to any rules imposed by Florida corrections staff." (Id.)

- "Mr. Verrier will be referred to Sex Offender Treatment as he did not complete it while incarcerated. Other treatment requirements will be assessed and discussed throughout supervision." (Id.)

- "Mr. Verrier will be required to complete face-to-face contact with local law enforcement upon his release and for updates as needed." (Id.)

- "Mr. Verrier's ex-wife, Phoebe Oakes, lives in Florida with their three children. She reported that Mr. Verrier has become obsessive of the children while incarcerated and she is fearful for their family. Notification will be provided to Florida Department of Corrections and to local law enforcement." (Id.)

On November 13, 2013, pursuant to the Interstate Compact for Adult Offender Supervision ("ICAOS"), plaintiff applied to have his supervision transferred to the state of Florida. (Id. at 15.) Plaintiff's application was received in Florida and defendant Peter Perrino (Perrino) was assigned to his case. (Id. at 16.) On December 6, 2013, Perrino attempted to establish contact with Verrier's mother and stepfather at the Saint James City address provided. (Id.) Upon attempting contact, Perrino reported, "There was no one home. I left my card and a copy of the sex offender conditions that could be placed on the DEF if he is accepted by Florida." (Id.) On December 31, 2013, after initially rejecting the application because Perrino was unable to establish contact, plaintiff's application was accepted. (Id. 16-24.)

Plaintiff's application for interstate transfer to Florida states:

- "I understand that this transfer of supervision will be subject to the rules of the Interstate Commission for Adult Offender Supervision." (Id. at 15, 21.)

- "I understand that my supervision in another state may be different than the supervision I would be subject to in this state [Wisconsin]. I agree to accept any differences that may exist because I believe that transferring my supervision to Florida (receiving state) will improve my chances for making a good adjustment in the community." (Id.)

- "I will comply with the terms and conditions of my supervision that have been placed on me, or that will be placed on me by Wisconsin (sending state) and Florida (receiving state)." (Id.)

- "I understand that if I do not comply with all of the terms and conditions that the sending state or the receiving state, or both, placed on me, that it will be considered a violation and I may be returned to the sending state." (Id.)

On February 18, 2014, plaintiff departed the state of Wisconsin and on February 24, 2014 he arrived in the state of Florida. (Id. at 29-30.) On his date of arrival, plaintiff was:

Instructed/delivered conditions of supervision; notified offender of expectation while on supervision & consequences of failing to comply with conditions of supervision; reviewed grievance process, after hours contact procedure, firearms/weapons/explosives, criminal registration, drug testing, employer notification, involvement in crime accounts; restoration of civil rights & HIPAA. S [subject] reported to intake, finger printed, photographed, and instructed to see CPO

today for reporting instructions and to be instructed to
SOP [sex offender policy/procedure] conditions.
[initials] GS

(Id. at 16.) Perrier made an entry on the same day that:

Written monthly report receive for current month. DEF3
is an out of state case that is reporting for the first
time. DEF was instructed in Florida sex offender orders.
The A & B Form and GPS ["global position surveillance"]
Rules. The DEF was also hooked up on GPS. DEF was given
a list of sex offender treatment providers to pick one
to attend treatment. P. [initial for PERRINO].

(Id.) On February 24, 2014, plaintiff was also fitted with a GPS
monitor. (Id. 31.) He was given and acknowledged Florida's
Standard Conditions of Supervision (id. at 32), Instructions to
Offenders (id. at 33), and Notice of Offender Responsibilities as
Required by Statute (id. at 34-35).

On April 10, 2014, plaintiff met with Perrino's supervisor,
defendant Diane LaPaugh (LaPaugh). (Id. at 36.) During this
meeting, LaPaugh re-instructed plaintiff on the Florida and
Wisconsin orders "—note, he has a 9pm to 7am curfew, no alcohol,
no bar, etc. 5. Reinstr[uct] on no contact w/victim. . . , 6. needs
to obtain employment . . . DML [initials]." (Id.) On June 23,
2014, Perrino conducted a home visit, during which plaintiff
complained about his GPS monitor going off. (Id.) Perrino noted
that plaintiff complained that it was "unreasonable to get calls
from the monitoring center. He only mentioned two calls and that
was unreasonable. He was being a jerk about it in front of his

father and told him I was leaving now before something is sounded. P [initials]." (Id. at 37-38.)

On July 17, 2014, another GPS alert went off. (Id. at 38.) "Unable to connect" was noted and plaintiff was contacted by a probation official, identified by initials BN. (Id.) BN noted "Contacted offender and instructed him to walk the unit outside. Mother, also on the line with attitude. This officer had to explain to her that her son could return to Wisconsin if she had a problem with this officer doing his job. BN [initials]." (Id. at 38-39.)

On August 12, 2014, Perrino conducted a home visit and reported:

> DEF and his parents at home. It was set up. The three
> have been going through the Interstate Compact rule they
> found online and have been looking for loop holes about
> his probation. They have concentrated on EM [electronic
> monitoring] and computer use. They made it sound like we
> were picking on her son by putting him on EM and we were
> keeping him from getting a job because we wouldn't let
> him use a computer. I told them I sent the conditions
> that Florida would put on him if he came down here and
> he agreed to follow them. I told them again if he doesn't
> like he could go back. They told I [sic] couldn't send
> him back unless he violated. They have too much time on
> there [sic] hands. This is the second time they all three
> have come at me with what they think they know. P
> [initials].

(Id. at 40.) On September 29, 2014, Perrino conducted a home visit and noted "DEF at home. DEF advised that he has a court date in family court about his wife not allowing him contact with his children. It appears that I am going to be ordered to come to the hearing and explain the probation orders. P [initials]" (Id. at

41.)  On October 28, 2014, Perrino made the following entry in
Verrier's case file:

> I was subpoenaed to testify in [sic] at a family court
> hearing regarding the DEF and his ex-wife and being able
> to see his children. After being crossed examined by
> both parties I was excused from the court. I testified
> on DEF's orders from Wisconsin and Florida were being
> inforced [sic].  The Judge did not ex-rule on the motion,
> which I am not sure what it was. I believe it was for
> visitation. The Judge was to make a ruling later. P
> [initials]

(Id. at 42, 44.)  Plaintiff asserts that during and after Perrino's
testimony, Perrino made comments indicating he was angry that he
had to testify and threatening to send plaintiff back to Wisconsin.
(Doc. #149-1, pp. 75, 77.)

On October 28, 2014, following the Family Court hearing,
plaintiff's ex-wife, Phoebe Oakes, sent an email to Ms. Donelson
at the Fort Myers Probation Office.  (Doc. #147-1, p. 46.)   Ms.
Oakes wrote:

> I am currently writing for advice and concern in
> regards to Joseph Verrier who is my ex-husband and his
> supervising parole officer Peter Perrino. Mr. Verrier
> was released to Florida via interstate compact agreement
> with WI back in February of this year. I do have a lot
> of concerns in regards to my own children which he is
> obsessed with. I did have a few telephonic conversations
> with Mr Perrino who assured me that he would not b[e]
> seeing the kids anytime soon and that he had a "bracelet"
> and put our house in Charlotte county as well the th[e],
> children's school on a do not go to zone or area.  Upon
> a recently family court case Mr Perrino stated under
> oath that basically he doesn't know some of Mr Verrier's
> restrictions and pretty much at this point Mr Verrier
> i[s] running around as is he never did anything wrong
> and appears to be calling the shots of his one probation.

Th[e] Wisconsin court states he should be following all their rules including Florida.

The areas I have concern with are contact with minors (including his own), use of the Internet and computer which apparently he's are [sic] already using (this is how his Crimes which he was convicted of started), congregating with other felons, and the fact that he has not obtained employment to this date. According to T[he] WI head supervisor even telephonic conversation have to be supervised.

I appreciate you taking the time to listen to my concerns and please advise since I am a concerned mother and looking to protect my children and others as well.

(Id. at 46.)

On October 30, 2014, LaPaugh wrote the following in plaintiff's probation file:

Phoned offender and advised him that his conditions of supervision are going to be enforced as imposed by the court w/o agent/probation officers modification. IE. He is not to have contact with anyone under the age of 18 years, as well as the victim, no computer use or access, and is not to communicate with anyone under supervision or any reg. sex offender. We discussed at length that Wisconsin probation may very well give the agent/P.O. the decretion [sic] to modify conditions, but that we are no longer going to do so. Although he continued to debate the issue, he stated that he understood and would comply. Although stated that he may contact his P.O. in Wisconsin in an attempt to get his conditions changed by the court. DML [initials]

(Id. at 42-43.) Then on October 31, 2014, LaPaugh wrote to plaintiff's ex-wife via email, stating:

Please be advised that your below e-mail was submitted to me for response. I have reviewed offender Verrier's file and have discussed his case with Officer Perrino. Be assured that Officer Perrino is aware and will enforce offender Verrier's conditions of supervision. In regard to your areas of concern, effective immediately: Absent a specific court order from the sentencing Court in Wisconsin, offender Verrier

is not to have contact with anyone under the age of 18.
Absent a specific court order from the sentencing Court
in Wisconsin, offender Verrier is not allowed to
communicate with anyone under supervision or any
registered sex offender, with the exception of those
present in his treatment sessions. Lastly, absent a
specific court order from the sentencing Court in
Wisconsin, offender Verrier is not to have computer or
internet or an e-mail address. His Wisconsin
Rules/Conditions of Supervision allow the "agent" or
probation officer to modify such conditions; however,
the Florida Department of Corrections is choosing not to
do so.

I have made contact with offender, Joseph Verrier
this date and instructed him to comply with the above
listed conditions.

If you have any further questions or concerns, do
not hesitate to contact me.

(Id. at 45-46.)  On November 6, 2014, Verrier wrote in his November

Supervision Report "supervisor stopped all activities req[uiring]

agent approval after 10/28 court hearing."  (Id. at 47.)  Under

the section titled "Action Steps I Will Take This Month," he wrote:

"Uncertain – seeking Wisconsin input" and "unsure what I am allowed

to do."  (Id.)

On December 19, 2014, the Family Court sent correspondence to

the attorneys regarding the October 28, 2014 in the matter stating:

As to the Contempt motion, the Former Wife would
not allow the Former Husband parenting time with the
children. During the Former Husband's incarceration, the
parties agreed to a parenting plan in anticipation of
his release. However, upon his release, the Former Wife
would not allow any contact between the Former Husband
and the children due to the terms of the Former Husband's
probation which was that he was to have no contact with
any children.

The Court finds that there was some confusion
regarding the Former Husband's "no children contact"
probation requirement and the Former Wife was under the

impression that he was not to have any contact. The
Former Husband's probation got transferred to Lee County
and that probation officer initially verified the Former
Wife's understanding of the probation requirement that
he should not be allowed contact with the parties' minor
children as it would be a violation of his probation.
However, once the probation officer was made aware of
Dr. Gunder's results, his understanding of the probation
requirement changed in that he said that the Former
Husband's contact with the parties' minor children would
not be in violation of his probation. The Court finds
that this was not a willful contempt on the Former Wife's
part, and therefore the Motion for Contempt is denied.

(Id. at 51.)

On December 23, 2014, plaintiff left his home without his GPS

monitor. (Doc. #147-2, p. 9.)  On December 24, 2014, plaintiff was

arrested for "a three hour bracelet gone. VOP [violation of

probation] sent to Wisconsin. P [initials]." (Id. at 8.)

On March 17, 2015, Perrino called plaintiff regarding a

meeting plaintiff was supposed to be having with his children.

(Id. at 11.)  Perrino made the following note regarding the phone

call:

I called the DEF because I was told that the DEF was
having a meeting with his children this week. I asked
the DEF if he was meeting with his children this wek
(sic) and he advised that the children are meeting with
the family court ordered counsel Nikki Haggart. I
reminded him the DEF that he is not to have contact with
his children or any other minor per his Florida orders.
He then went on about his law suit against me and the
Department for not following Wisconsins [sic] orders. I
did not get into that with him. I just reminded him not
to have any contact. P [initials].

(Id.)

On October 30, 2015, LaPaugh writes:

> After submitting e-mails to Officer Perrino concerning
> approval to trick or treat w/his female friend and her
> young daughter, he left a phone message for me to call
> him.  I returned a phone call w/o an answer and left
> message.  He called back and continued to challenge
> asking for a statute and where he could find it in
> writing.  Clearly said that he is not to participate in
> such Halloween activities, due to the fact that he is to
> continue to have no contact with minors.  Then asked if
> he could go to a Halloween party at the home of his
> female friend's [sic] where there will be children.
> Told him absolutely not.  Stated that his G/friend is
> there to supervise.  Told him that she is not
> supervising children that are not here and he is only
> approved to have supervised w/his own children and the
> girlfriend's daughter.  Throughout the conversation he
> stated that he wanted to have his questions answered so
> that if he could write it up in a law suite [sic]. He
> stated that if he is not to be around minors why can he
> go to the farm market.  Explained that a child's
> activity is obviously different that going to a grocery
> store or church.  Noted that he was made aware that he
> is not to participate in Halloween activities and not to
> be in contact with minors. DML [initials].

(Id. at 65.)

On January 8, 2016, plaintiff's female friend, Andrea
Hendrickson, wrote an email to LaPaugh, stating:

> Today I found some very disturbing emails in my business
> partner's account. He is a registered sex offender here
> in Lee County, his name is Joseph (Jay) Verrier.  As I
> stated we are business partners and he checked his gmail
> from my iPhone.  Later I was attempting to check my
> email from my iPhone and his account was still open in
> the app.  I took screenshots and I've included some.
> There are a number of others.  I'm not sure if this is
> an appropriate method to report this, but I'm at a loss
> as to how to proceed.  I believe the nature of his
> offenses forbid the use computers in this manner.  Thank
> you for your anticipated concern.

(Id. at 66.)   On January 22, 2016, Perrino wrote, "I sent a response to CAR from Wisconsin.   I also asked them to advised [sic] which of the three probation that DEF should be following. They are all different." (Id. at 69.)

On March 9, 2016, a warrantless search of plaintiff's residence was conducted by Perrino, LaPaugh, Bradley Rouskey, a computer specialist, and local sheriff officers. (Id. at 72.) Pornographic materials were found on several laptops and other electronic devices and plaintiff was arrested by the Lee County Sheriff's Department and transported to jail. (Id.)

Plaintiff's Therapist, Dr. Roger Gruder, wrote a letter on March 14, 2016 stating:

> As you know a risk assessment was completed in June of 2014, a portion of which pertained to internet access. It was recommended that [VERRIER] be granted permission to be on the internet for employment purposes, furthering his education and electronic mail only. Mr. Verrier chose to violate those parameters. Therefore, should he be released, we will no longer provide services.

(Id. at 74.)   On March 16, 2016, LaPaugh noted:

> Tim Strickland (Interstate Compact) phoned me back in regard to my concerns about Wisconsin's response to VOP [violation of probation] 'continue to supervise.' . . . [Strickland] stated we of course could not force Wisconsin to take the offender back, but that we could apply sanctions . . . [I]f [VERRIER] is not willing to sign new conditions . . . that he can return to Wisconsin. If violates again, it will be his 3rd violation and Wisconsin will have to take him back. DML [initials].

(Id. at 72, 75.)   On March 28, 2016, LaPaugh wrote:

Judge Steinbeck was told that Judges in the state most (sic) order Def's held for 30 days. So she ordered that the Def be held until 4/7/16 and the first appearance Judge should revisit the hold on that day. P [initials]. Officer Reddick from the Lee County Jail phoned to advise that LCSO received a teletype that stated – do not hold subject as Wisconsin Department of Corrections will not extradite. I told her that such release requests go through the ICOTS system. She was aware of this and stated that she is going to make some phone calls . . . . [Officer Reddick] made a call to Wisconsin and was told that she should have not received the teletype. DL [initials].

(Id. at 76.)

On March 25, 2016, LaPaugh sent an email to Bradley Rouskey and Perrino stating that plaintiff would be given an opportunity for a probable cause hearing in Florida, and if probable cause is found, he will be held in custody with the intent that Wisconsin will retake him. (Id. at 77.) A probable cause hearing was held on April 20, 2016 by Hearing Officer Pamela Carwise of the Florida Commission on Offender Review. (Id. at 90-92.) The day prior to the probable cause hearing, Wisconsin issued an order to Florida to return plaintiff to Wisconsin. (Id.) On May 7, 2016, plaintiff returned to Wisconsin with a Revocation Summary written by Wisconsin Agent, Ryan Hartfield. (Id. at 78-82.) On May 18, 2016, in lieu of returning to prison, plaintiff accepted an offer for Alternative to Revocation treatment plan where he agreed to participate in sex offender treatment. (Id. at 80.) He completed the Alternative to Revocation treatment plan on September 28, 2016 and returned to Florida on October 24, 2016. (Id. at 80, 83.)

On December 29, 2014, plaintiff brought this action against Peter Perrino and Diane LaPaugh. (Doc. #1.) Amendments to the initial Complaint were made, and on August 4, 2016, this Court entered an Order on defendants Motion to Dismiss plaintiff's Third Amended Complaint. (Doc. #46.) The Order dismissed Count I as to the defendants in their individual capacities as it relates to defendants' arrest of plaintiff for allegedly violating his probation terms, denied the motion to dismiss Count II, and dismissed Counts III and IV as to defendants in their individual capacities. (Id.) Although the Court allowed plaintiff to refile a Fourth Amended Complaint, plaintiff did not avail himself of this opportunity, and defendants filed an Answer and Affirmative defense on August 16, 2016. (Doc. #48.) On November 6, 2017, defendants Perrino and LaPaugh filed a Motion for Summary Judgment as to all remaining counts (Doc. #147), and on November 21, 2017, plaintiff filed a Response to plaintiff's Motion for Summary Judgment (Doc. #149).

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us,

Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

A pleading drafted by a party proceeding *pro se*, like the Third Amended Complaint at issue here, is held to a less stringent standard than one drafted by an attorney, and the Court will construe the allegations contained therein liberally. Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). "[A] pro

se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). "This liberal construction, however, does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Hickman v. Hickman, 563 F. App'x 742, 743 (11th Cir. 2014) (internal quotation marks and citations omitted). *Pro se* parties are still required to conform to the procedural rules. Id.

## III.

### A. Count I: Retaliation

Count I of plaintiff's Third Amended Complaint alleges that defendants retaliated against plaintiff for exercising his constitutional right to attend a court hearing. (Doc. #35, ¶¶ 20-53.) Defendants assert they are entitled to summary judgment as to Count I because (1) plaintiff's visitation and communication rights with his children are subject to the jurisdiction of Florida's Family Court, and not the defendants, (2) plaintiff has failed to show the protected conduct was a substantial or motivating factor behind the retaliatory misconduct, (3) there were never any constraints placed on plaintiff's ability to volunteer, (4) the adverse effect is not of constitutional dimension and is instead plaintiff's disagreement with the way

Florida supervises his probation, and (5) plaintiff's supervision was modified for a proper purpose and not discipline or retaliate against him. (Doc. #147, pp. 14-19.)

In order to establish a retaliation claim, "a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted). "Once the plaintiff establishes that the protected conduct was a motivating factor behind the harm, the burden of production shifts to the defendant." Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013 (citation omitted). "The defendant can prevail on summary judgment if it can show it would have taken the same action in the absence of the protected activity." Id. (citation omitted).

Defendants first assert that they are entitled to judgment as a matter of law as to plaintiff's retaliation claim because visitation rights and communications with plaintiff's children are subject to the jurisdiction of Florida's Family Court and not defendants. (Doc. #147, pp. 15-16.) It is clear that issues of visitation and communication between a parent and their child are within the jurisdiction of the Family Court. This, however, is not dispositive of the issue at hand. First, plaintiff is alleging

that other rights were also rescinded in retaliation of him calling Agent Perrino to testify. Further, although the Family Court does determine matters such as visitation and communication with one's children, it is clear that probation conditions may also limit an individual's right to be in contact with children.

Defendants also assert that plaintiff has not established the causal connection between his protected activity and the retaliatory conduct. (Doc. #147, pp. 17-18.) To support his claim that the defendants' actions were retaliatory, plaintiff's Third Amended Complaint points to statements made by Perrino indicating that he was mad that he had to testify in court and threatening to send plaintiff back to Wisconsin for challenging the Department of Corrections' authority, and relies on the temporal proximity between the court testimony and the rescinded rights. (Doc. #35, pp. 4-11.) The only summary judgment evidence attached to the Third Amended Complaint to support these allegations is an undated letter authored by plaintiff and addressed to "Agent Peter Perrino's Supervisor." (Docs. ##35-13, 35-14.) In his Response to defendants' Motion for Summary Judgment, plaintiff reiterates these assertions, and in support attaches an Affidavit based on his personal knowledge (Doc. #149-1, pp. 72-73), an Affidavit of Nancy McGuire (id. at 74-75),[1] and

---

[1] It appears that Nancy McGuire is plaintiff's mother. (Doc. #149-1, p. 79.)

an Affidavit of John Geib (<u>id.</u> at 76-77).[2] These Affidavits show
that plaintiff was told he could no longer volunteer at All Souls
Church, Perrino told plaintiff that if he challenged his probation
rules and conditions he would be returned to Wisconsin, and that
Perrino appeared angry and made statements indicating that he was
upset for being involved in the Family Court proceeding. (<u>id.</u> at
73, 75, 77.)

To rebut plaintiff's claim that the protected conduct was a
motivating factor in the rescission of his previously granted
conditions, defendants assert that LaPaugh, and not Perrino,
revoked the modifications made by Perrino after being contacted by
plaintiff's ex-wife regarding her concerns about plaintiff's
supervision and certain restrictions that were not being enforced,
and that LaPaugh felt the need to discuss this with Verrier because
Perrino had been allowing modifications to his conditions. (Doc.
#147, p. 18.) In support, they attach an email dated October 28,
2014 from plaintiff's ex-wife to the department of corrections
where she expresses her concern regarding plaintiff's conditions
of probation (Doc. #147-1, p. 46), an Affidavit of LaPaugh that
she informed plaintiff that the modifications previously allowed
by Perrino would be rescinded as they were not approved by LaPaugh
and may be in violation of Wisconsin's conditions of supervision

---

[2] It appears that John Geib is plaintiff's stepfather. (<u>Id.</u>)

(Doc. #147-2, pp. 50-51), an Affidavit of Peter Perrino (<u>id.</u> at 52-54), and an Affidavit of Ryan Hartfield (<u>id.</u> at 55-57).

The Court finds that plaintiff has failed to establish that invoking his right to call the probation officer to testify at a Family Court hearing[3] was a substantial or motivating factor in the probation officer's supervisor revoking the modifications to his probation conditions that were previously allowed. The evidence presented that Perrino made comments that he was not happy with the fact that he was involved with the Family Court hearing does support potential retaliation by Perrino. But the evidence establishes that Perrino was not the person who revoked the modifications. It was his supervisor, LaPaugh, who revoked the modifications following the hearing. There is no evidence that LaPaugh did this in retaliation for Perrino being called to testify other than the temporal proximity. Rather, the evidence is that LaPaugh did this in response to the uncertainty regarding the potential conflict between Wisconsin's conditions and the Family Court's visitation ruling, and following plaintiff's ex-wife's

---

[3] There is in fact no evidence that plaintiff was the one who called Perrino to testify and not plaintiff's ex-wife. (<u>See</u> Doc. #147-1, p. 44.) Defendants have not raised this argument in their Motion for Summary Judgment. There is, however, a note made by Perrino indicating that he learned from plaintiff that he was going to be called to testify at the Family Court proceeding. (<u>Id.</u> at 41.)

email and the subsequent re-examination of plaintiff's conditions of probation.

Accordingly, the Court finds that defendants are entitled to entry of summary judgment as to Count I because plaintiff has failed to establish that the alleged retaliatory conduct was caused by his invoking a constitutional right.

## B. Count II: Intentional Discrimination in Violation of Equal Protection Clause

Defendants assert that they are entitled to entry of summary judgment as to Count II because (1) plaintiff cannot show that he was treated differently than others similarly situated, and (2) plaintiff fails to establish that Perrino and LaPaugh applied statutes and rules for the purpose of discriminating against him. (Doc. #147, pp. 19-20.)

The Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923)). To prevail on an equal

protection claim, plaintiff "must show [that he was] intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment." Grider v. City of Auburn, 618 F.3d 1240, 1263-64 (11th Cir. 2010) (citing Olech, 528 U.S. at 564). The Eleventh Circuit recognizes claims for intentional discrimination in violation of the equal protection clause where plaintiff alleges that he is part of a class that is being treated disparately and where plaintiff adequately sets forth a "class of one" theory. See Olech, 528 U.S. at 565. "A 'class of one' equal protection claim does not allege discrimination against a protected class, but rather asserts that the plaintiff has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Leib v. Hillsborough Cty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009) (citation omitted).

Defendants first assert that plaintiff cannot and has not shown that he was treated differently than others similarly situated. (Doc. #46, p. 14.) The Court agrees. Plaintiff has failed to identify one similarly situated probationer who has been treated differently than he has. Instead, he relies on vague, broad assertions that he is being treated differently than similarly situated probationers. Therefore, plaintiff's claim

necessarily fails because he has not shown that he was treated differently from other similarly situated probationers.  Sweet v. Dept. of Corr., 467 F.3d 1311, 1319 (11th Cir. 2006).

Further, plaintiff points to Florida statutes that impose mandatory conditions of probation for certain sex offenses. Plaintiff asserts that this specific statutory condition is limited to offenses committed on or after May 26, 2010, therefore imposing this condition on him results in unequal treatment because it is not imposed on similarly situated probationers who committed offenses before May 26, 2010.  (Id.)

First of all, while the statute pointed to includes mandatory conditions for individuals who commit specified sexual offenses, there is nothing that prevents these special conditions from being imposed for other crimes or for sexual offenses committed before the specified date.  Secondly, looking to the 2009 versions of some of these statutes, it is clear that these conditions would have been applied to plaintiff would he have been in Florida.  See Fla. Stat. § 948.30 (1)(f) (2009) (prohibiting volunteering or working where children regular congregate).  Lastly, some of these conditions were imposed by the sending state and plaintiff agreed to abide by sending state and receiving state conditions as a condition of transfer to Florida.  (Doc. #147-1, pp. 2, 6, 13, 15.)

Accordingly, the Court finds that defendants are entitled to summary judgment as a matter of law and grants defendants' Motion for Summary Judgment as to Count II.

**C. Count III: Unconstitutionality of Fla. Stat. § 948.30(1)(e)**

Count III essentially asserts a claim challenging the constitutionality of Florida Statute section 948.30(1)(e) as being void for vagueness. (Doc. #35, pp. 17-24; see also Doc. #46, pp. 17-18 & n.4.)

Section 948.30(1)(e) provides:

Conditions imposed pursuant to this section do not require oral pronouncement at the time of sentencing and shall be considered standard conditions of probation or community control for offenders specified in this section.

(1) Effective for probationers or community controllees whose crime was committed on or after October 1, 1995, and who are placed under supervision for violation of chapter 794, s. 800.04, s. 827.071, s. 847.0135(5), or s. 847.0145, the court must impose the following conditions in addition to all other standard and special conditions imposed:

(e) If the victim was under the age of 18, a prohibition on contact with a child under the age of 18 except as provided in this paragraph. The court may approve supervised contact with a child under the age of 18 if the approval is based upon a recommendation for contact issued by a qualified practitioner who is basing the recommendation on a risk assessment. Further, the sex offender must be currently enrolled in or have successfully completed a sex offender therapy program. The court may not grant supervised contact with a child if the contact is not recommended by a qualified practitioner and may deny supervised contact with a child at any time. When considering whether to approve supervised contact with a child, the court must review and consider the following:

1. A risk assessment completed by a qualified practitioner. The qualified practitioner must prepare a written report that must include the findings of the assessment and address each of the following components:

> a. The sex offender's current legal status;
> b. The sex offender's history of adult charges with apparent sexual motivation;
> c. The sex offender's history of adult charges without apparent sexual motivation;
> d. The sex offender's history of juvenile charges, whenever available;
> e. The sex offender's offender treatment history, including consultations with the sex offender's treating, or most recent treating, therapist;
> f. The sex offender's current mental status;
> g. The sex offender's mental health and substance abuse treatment history as provided by the Department of Corrections;
> h. The sex offender's personal, social, educational, and work history;
> i. The results of current psychological testing of the sex offender if determined necessary by the qualified practitioner;
> j. A description of the proposed contact, including the location, frequency, duration, and supervisory arrangement;
> k. The child's preference and relative comfort level with the proposed contact, when age appropriate;
> l. The parent's or legal guardian's preference regarding the proposed contact; and
> m. The qualified practitioner's opinion, along with the basis for that opinion, as to whether the proposed contact would likely pose significant risk of emotional or physical harm to the child.

The written report of the assessment must be given to the court . . . .

Fla. Stat. § 948.30(1)(e).

Defendants assert that they are entitled to summary judgment as to Count III because (1) plaintiff has failed to provide notice

to the attorney general as required by the Florida Rules of Civil Procedure, (2) defendants are not the proper parties for this constitutional challenge, and (3) the statute is not vague. (Doc. #147, pp. 20-22.)

As to defendants' first argument, plaintiff has brought this action under federal law in a federal court. Therefore there is no reason why a state rule of civil procedure would be applicable. Further, the federal counterpart is set forth in Federal Rule of Civil Procedure 5.1 and does not require any further notice or service.[4]

As to defendants' second argument, as previously stated by this Court, when challenging the constitutionality of a rule of law, the plaintiff must bring the "action against the state official or agency responsible for enforcing the allegedly unconstitutional scheme." Women's Emergency Network v. Bush, 214 F. Supp. 2d 1316, 1317 (S.D. Fla. 2002) (citing ACLU v. The Fla. Bar, 999 F.2d 1486, 1490-91 (11th Cir. 1993)). The statute challenged as unconstitutional in Count III requires the court to impose certain conditions of probation for certain offenders. Fla. Stat. § 948.30(1)(e). Here, the only two remaining

---

[4] Rule 5.1 requires notice of a constitutional question and service of the notice and paper where "the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity." Fed. R. Civ. P. 5.1(a). Here, the defendants are sued, at least in part, as agents of the Florida Department of Corrections. (Doc. #35.)

defendants for Count III are Perrino and LaPaugh in their official capacities.  Perrino is an Agent with the Florida Department of Corrections, and LaPaugh is his supervisor.  Therefore, the court imposing the probation conditions is the one enforcing the statute, and not defendants.  However, even viewing this requirement more liberally, and extending it to the defendants actually enforcing the conditions once the court imposes the mandatory conditions as required by the statute, the Court still does not find this statute void for vagueness.

Plaintiff contends that the condition regarding contact with minors is vague because it may apply to casual or unavoidable contact with minors. (Doc. #35, pp. 17-24.)  "This argument is one that has a long and familiar history in the courts; associational conditions placed upon parolees and probationers are commonplace and have frequently been challenged as overly broad or vague because they potentially extend to casual encounters." United States v. Loy, 237 F.3d 251, 268-69 (3d Cir. 2001) (citation omitted). It has been held that these "associational conditions do not extend to casual or chance meetings."  Id. at 269 (citing Arciniega v. Freeman, 404 U.S. 4 (1971));  United States v. Paul, 274 F.3d 155, 165-67 (finding restrictions on "contact with minors [were] neither impermissibly vague nor unreasonably broad"); United States v. Bee, 162 F.3d 1232, 1235 (9th Cir. 1998) (upholding conditions prohibiting contact with children under the

age of 18 unless approved by probation officer and prohibiting loitering "within 100 feet of school yards, parks, playgrounds, arcades, or other places primarily used by children under the age of 18"). In accordance with these similar cases, the Court finds that statute requiring a mandatory condition restricting Verrier's contact with minors is not unconstitutionally vague. Accordingly, defendants' Motion for Summary Judgment as to Count III is granted.

**D. Count IV: Unconstitutionality of Fla. Stat. § 948.03(1)(d)**

Count IV essentially asserts a claim challenging the constitutionality of Florida Statute section 948.03(1)(d) as being void for vagueness. (Doc. #35, pp. 24-27; see also Doc. #46, pp. 17-18 & n.4.)

Section 948.03(1)(d) provides:

(1) The court shall determine the terms and conditions of probation. Conditions specified in this section do not require oral pronouncement at the time of sentencing and may be considered standard conditions of probation. These conditions may include among them the following, that the probationer or offender in community control shall:

. . .

(d) Remain within a specified place

. . . .

Fla. Stat. § 948.03(1)(d).

As with Count III, the Court finds that this statute is aimed at the court, and the defendants, as members of the Florida Department of Corrections, are not responsible for making sure the

court does or does not include these conditions.  However, as with Count III, even reading the "enforcer" requirement liberally, the Court still finds that section 948.03(1)(d) is not void for vagueness, at least as it applies to plaintiff.

The statute at issue does not directly apply to plaintiff. Instead, it applies to the court imposing the conditions of probation and provides for additional conditions that *may* be imposed.  It instructs the judge that he or she may require, as a condition of probation, that the probationer remain within a specified area, i.e. the county.  Therefore, to remain in a specified place is not the actual condition that has been imposed on plaintiff.  Plaintiff has even admitted in his pleadings, and elsewhere, that he was required to remain within a specified county.

Further "probationers are often subject to limitations to which ordinary citizens are free." United States v. Cothran, 855 F.2d 749, 751 (11th Cir. 1988). "Such limitations are permitted because probationers have been convicted of crimes and have thereby given the state a compelling interest in limiting their liberty in order to effectuate their rehabilitation and to protect society." Id. (quoting Owens v. Kelley, 681 F.2d 1362, 1367 (11th Cir. 1982)).  Here, the limitation actually imposed by plaintiff— that he remain within his county of residence absent agent approval—is reasonable in order to effectuate his rehabilitation

and to enable adequate probation supervision on him. It is this actual restriction and not the statute that informs plaintiff where he can or cannot go. Even as such, residency restrictions have been upheld as constitutional. See id. at 751-53.[5]

Accordingly, the Court grants defendants' Motion for Summary Judgment as to Count IV.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendants P. Perrino and D. LaPaugh's Motion for Summary Judgment (Doc. #147) is **GRANTED.** The Clerk is directed to enter judgment in favor of defendants and against plaintiff as to Counts I, II, III, and IV, terminate all pending motions and deadlines, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __18th__ day of January, 2018.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of Record

---

[5] The Court notes that Congress has imposed restrictions with similar "specified place" language which has to date not been held unconstitutional. See 18 U.S.C. § 3563(b)(13) ("The court may provide that . . . the defendant . . . reside in a specified place or area, or refrain from residing in a specified place or area[.]").